IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH WOLD, an individual, Plaintiff, <br><br> vs. <br><br> EL CENTRO FINANCE, INC., an Idaho corporation, Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE <br><br> Case No. CV-08-264-S-BLW |

This matter is before the Court on Defendant's Motions for Summary Judgment and to Strike.[1] Because a genuine issue of material fact exists, the Court will deny Defendant's Motion For Summary Judgement. Because the Court can evaluate the Motion for Summary Judgment without referencing the objected-to portions of Plaintiff's affidavits, the Court will deny as moot Defendant's Motion to Strike.

---

[1] After reviewing the parties' respective memoranda, the Court finds that argument is not necessary and therefore vacates the hearing and provides the following decision on the Motion.

I. INTRODUCTION

In this employment discrimination case, Defendant argues that the undisputed reason Plaintiff was not hired was because Plaintiff's application materials were routed to the wrong person and thus not considered. Therefore, Defendant argues, Plaintiff cannot prove that he was discriminated against based on age. Plaintiff points to an email mistakenly sent to Plaintiff by Defendant stating "He must be old," as well as statements by Defendant to the Idaho Human Rights Commission (IHRC) that Plaintiff was not hired because Plaintiff was less qualified than other applicants and was too aggressive as evidence that Defendant did consider Plaintiff's application, and argues that this evidence raises a genuine issue of material fact as to Defendant's true motivations for not hiring him. Defendant objects to portions of Plaintiff's affidavits on evidentiary grounds and moves this Court to strike the offending paragraphs.

II. FACTUAL BACKGROUND

Plaintiff Kenneth Wold submitted a cover letter and resume in response to a job advertisement for the position of Operations Manager with Defendant El Centro Finance on March 14, 2007.[2] The advertisement for the position stated that the company was "[i]n the business of providing multiple financial services (Insurance, Mortgages, Real Estate, Tax Preparation, Bookkeeping, and Payroll)." On March 23, 2007, Plaintiff received an email (intended for another individual) from Benjamin Page, CEO of El Centro Finance, which stated in part: "Damn. I'm here late trying to get through emails – I just saw this one I missed somehow and it is a week old. Check it out – I don't know what I think. He must be old – and just looking

---

[2]Docket No. 35 at 2.

for something to do."³  When Plaintiff failed to receive any further communication about the position, he concluded Defendant had rejected his application and filed a Charge of Discrimination with the Idaho Human Rights Commission (IHRC) and Equal Employment Opportunity Commission (EEOC) on April 10, 2007.⁴  The IHRC found probable cause to believe that Defendant engaged in unlawful employment discrimination, but chose not to file a lawsuit because its limited litigation resources.⁵  Both the IHRC and EEOC administratively dismissed Plaintiff's complaints and provided Plaintiff with a Right to Sue letter.  Plaintiff filed the instant case within the 90 days required by the Idaho Human Rights Act.

### III.  SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."⁶  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."⁷  Because of the similarity between Idaho Human Rights Act (IHRA), Age Discrimination in Employment Act (ADEA), and Title VII claims the Court should apply the "quantum of proof

---

³*Id.*

⁴*Id.* at 3.

⁵*Id.* at 36.

⁶Fed. R. Civ. P. 56(c).

⁷*Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

and standards promulgated in discrimination cases arising under Title VII"[8] to cases arising under the IHRA and ADEA.[9]

A plaintiff may base his prima facie case of discrimination under the ADEA on either "direct evidence of discriminatory intent"[10] or on "a presumption arising from the factors such as those set forth in *McDonnell Douglas.*"[11] To establish a prima facie case based on the presumption of discriminatory intent, a plaintiff must show that 1) he was a member of the class protected by the ADEA; 2) he applied for and was qualified for a job for which the employer was seeking applicants; 3) despite being qualified, he was rejected; and 4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.[12]

Once a prima facie case is established, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. If the employer

---

[8]*Bowles v. Keating*, 606 P.2d 458, 462 (Idaho 1979) (referencing the similarities between the IHRA and Title VII)

[9]*See Mckennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 358 (1995) (noting that the ADEA and Title VII share common features and a common purpose, and applying standards from Title VII cases to an ADEA case). *See also Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 141 (2000) (noting that where the parties do not dispute whether the *McDonnell Douglas* Title VII framework applies, the Court would consider it fully applicable). Neither party disputes the applicability of the framework (*see* Docket No. 34 at 8 and Docket No. 32-2 at 5).

[10]*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

[11]*Id.*

[12]*Lowe v. City of Monrovia*, 775 F. 2d 998, 1005 (9th Cir. 1985); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.[13]  "A plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"[14] "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."[15]

In the case at bar, Defendants do not dispute that Plaintiff has satisfied the first two elements of the *McDonnell Douglas* test.  Rather, Defendant rests its motion for summary judgment on the argument that Plaintiff was not rejected and that Plaintiff has failed to show circumstances that give rise to an inference of discrimination.

A.   WHETHER PLAINTIFF WAS REJECTED BY DEFENDANT

Defendant asserts that it never rejected Plaintiff because Plaintiff's application was allegedly never forwarded to the individual in charge of the hiring process.[16]  Defendant explains that Mr. Page, El Centro's CEO, received Plaintiff's application, but instead of forwarding it to Mr. Levi King, the hiring coordinator, Mr. Page mistakenly "returned" Plaintiff's application to

---

[13]*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

[14]*Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

[15]*Diaz*, 521 F.3d at 1207 (quoting *Chuang v. Univ. of Cal. Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

[16]Docket No. 32-2 at 7.

him and it was omitted from the selection process.[17]  However, Defendant's assertions are contradicted by its own statements to the Idaho Human Rights Commission.  As part of its investigative process, the IHRC requested that Defendant (then "Respondent") provide justification for its decision not to hire Plaintiff.  The IHRC's Summary of Investigation indicates that Defendant's position was that Plaintiff was rejected because his application materials showed "aggressiveness," because Plaintiff was unqualified for the position, because there was another applicant with exceptional credentials, and because Plaintiff's past security and military work led Defendant to believe Plaintiff's interest in the position was "odd."[18]

Defendant states that "despite what the Defendant might have said to the IHRC months after sending the email, the email remains the best evidence of what occurred there" in support of its contention that it never processed Plaintiff's application.  Furthermore, Defendant points to Plaintiff's statement to the IHRC that "[i]t appears that [Defendant] did not conduct that necessary assessment of my skills for potential job placement until [Plaintiff] submitted a complaint to the Human Rights Commission"[19] as evidence that Plaintiff "recognizes that the reasons given by the Defendant [to the IHRC] were after-the-fact considerations,"[20] and thus, that Plaintiff does not dispute that the reason he was not hired was because Defendant mis-routed his application.  However, Plaintiff's statement to the IHRC was speculation, not a stipulation of

---

[17]*Id.*

[18]Docket No. 35, Ex. F at 32-33.

[19]Docket No. 40-2 at 5.

[20]Docket No. 40 at 7.

fact.  Defendant would have this Court find that its explanation that it never received Plaintiff's application is more credible than its explanation to the IHRC that Plaintiff was too aggressive and not qualified.  However, "it is the sole province of the jury to determine questions of credibility."[21]  Thus, the Court finds that a genuine issue of material fact exists as to whether Defendant received and reviewed Plaintiff's application, and thus, as to whether Defendant rejected Plaintiff's application.

B.    WHETHER PLAINTIFF HAS SHOWN CIRCUMSTANCES THAT GIVE RISE TO AN INFERENCE OF DISCRIMINATION

The parties present four issues regarding whether Plaintiff has provided enough evidence that gives rise to an inference of discrimination to defeat a motion for summary judgment: (1) whether the probable cause determination from the IHRC is sufficient to create a genuine issue of material fact; (2) whether the language "he must be old - and just looking for something to do" is sufficient to support an inference of discriminatory motive; (3) whether Plaintiff has provided enough evidence to show that Defendant's explanation may be a pretext; and (4) the importance of the language that Plaintiff must show that his age "actually played a role in the employer's decision making process and had a determinative influence on the outcome."

   *1.    Importance of the IHRC's Probable Cause Determination*

Plaintiff argues that the probable cause determination from the IHRC creates a genuine issue of material fact as to whether circumstances supporting an inference of discrimination exist

---

[21] *Moses v. Payne*, 543 F.3d 1090, 1105 (9th Cir. 2008).

sufficient to withstand summary judgment.[22]  However, the case cited by Plaintiff, *Gifford v. Atchinson, Topeka, and Santa Fe Ry. Co.*,[23] was decided by the Ninth Circuit in 1982.  Since then, the Ninth Circuit has determined that while a determination letter is a "highly probative evaluation of an individual's discrimination complaint,"[24] "the EEOC reasonable cause determination [does not] create a genuine issue of material fact."[25]  Nevertheless, "[i]t remains with the district court, of course, to determine the degree of weight to be assigned to [a determination letter]."[26]  Thus, Plaintiff may not merely point to the determination letter as evidence sufficient to create a genuine issue of material fact.

       2.       *Whether "He Must be Old" Gives Rise to an Inference of Discrimination*

Defendant argues that the mere language "he must be old - and just looking for something to do" is insufficient to establish circumstantial evidence of age discrimination.  Defendant cites a number of examples where discriminatory language was held to be insufficient.  Examining those examples reveals the following rule: where comments are made off-hand, not in respect to the plaintiff, or are colloquialisms, they fail to give rise to an inference of discrimination.  For

---

[22]Docket No. 34 at 11.

[23]685 F.2d 1149, 1156 (9th Cir. 1982).

[24]*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) (quoting *Plummer v. W. Intn'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981)

[25]*Coleman*, 232 F.3d at 1283.  *See also Mondero v. Salt River* Project, 400 F.3d 1207, 1215 (9th Cir. 2005).

[26]*Plummer*, 656 F.2d at 503 (quoting Bradshaw v. Zoological Society of San Diego, 569 F.2d 1066 (9th Cir. 1978).

8

example, in *Nesbit v. Pepsico, Inc.*[27] and *Nidds v. Schindler Elevator Corp.*,[28] the Ninth Circuit considered employer's statement "we don't necessarily like grey hair"[29] and reference to "old timers,"[30] respectively. In *Nesbit,* the court found that the "comment was uttered in an ambivalent manner and was not tied directly to [the employee's] termination."[31] In *Nidds*, the court noted that the "old timer" comment was similar to the "grey hair" comment in *Nesbit*, stating that "[the employer's] comment was ambiguous because it could refer as well to longtime employees or to employees who failed to follow directions as to employees over 40. Moreover, the comment was not tied directly to Nidds' layoff." The court went on to reason that "therefore, it is weak evidence and not enough to create an inference of age discrimination.[32] In *Rose v. Wells Fargo & Co.,* the court rejected the argument that use of the term "old boy network" gave rise to an inference of discrimination, reasoning that the phrase "is generally considered a colloquialism unrelated to age."[33]

However, where the language refers to the plaintiff directly and is not a colloquialism, it

---

[27] 994 F.2d 703 (9th Cir. 1993).

[28] 113 F.3d 912 (9th Cir. 1996).

[29] *Nesbit*, 994 F.2d at 705.

[30] *Nidds*, 113 F.3d at 918-19.

[31] *Nesbit*, 994 F.2d at 705.

[32] *Id.* at 919. *See also Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) ("[S]tray remarks, . . .when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria") (quoting *Smith v. Firestone Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989)).

[33] 902 F.2d 1417, 1423 (9th Cir. 1990).

can serve as evidence of discriminatory motive.  Remarks that an employee is "too damn old to do [his] job,"[34] and that "the board wanted someone younger for the job"[35] have been held to be "clearly sufficient to support an inference that the employer acted in a discriminatory fashion."[36]

In the case at bar, Mr. Page's comment "he must be old - and just looking for something to do" referred directly to Plaintiff.  It is not analogous to comments referencing "grey hair" and "old timers" generally, nor is it analogous to colloquialisms such as "old boy network."  Therefore, it cannot be accurately characterized as off-hand or unspecific.  The comment particularly indicates a discriminatory animus in the "and just looking for something to do" phrase.  "He must be old" could be characterized as a mere observation, not necessarily discriminatory.  However, "and just looking for something to do" runs afoul of the "[t]he prohibited stereotype ('Older employees are likely to be ___) . . .' that the ADEA seeks to remedy,"[37] namely, that older employees (like Plaintiff) are likely to be looking for work to just keep themselves busy, rather than looking for work with the more desirable motivations of working hard and advancing their career.  This broad, negative characterization of older employees is precisely the type of prohibited stereotype the ADEA seeks to remedy and gives rise to an inference of discrimination.

---

[34] *Pottenger v. Potlach Corp.*, 329 F.3d 740, 747 (9th Cir. 2003) (quoting *Reeves*, 530 U.S. at 151) (alteration in original).

[35] *Pottenger*, 329 F.3d at 747 (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410-11 (9th Cir.1996).

[36] *Pottenger*, 329 F.3d at 747.

[37] *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612 (1993).

3.       *Whether Plaintiff has Provided Evidence that Defendant's Explanation is a Pretext*

Once an employer proffers a legitimate, nondiscriminatory reason for an adverse employment decision, the burden shifts to the employee to "prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination."[38]  A plaintiff "'must produce specific, substantial evidence of pretext.'"[39] However, at the summary judgement stage, "[Plaintiff] must only show that a rational trier of fact could, on all the evidence, find that [Defendant's] explanation was pretextual."[40]  A plaintiff may establish pretext "'. . . by showing that the employer's proffered explanation is unworthy of credence.'"[41]  "[F]undamentally different justifications for an employer's action . . . give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason."[42]

Here, Plaintiff has produced specific, substantial evidence that Defendant's proffered explanation is unworthy of credence, namely, Defendant's statements to the IHRC.[43]  Defendant

---

[38]*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

[39]*Coleman*, 232 F.3d at 1282 (quoting *Wallis* 26 F.3d at 890).

[40]*Pottenger*, 329 F.3d at 746.

[41]*Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256).

[42]*Nidds* 113 F.3d at 918 (quoting *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993) (internal quotation omitted).

[43]*See* Docket No. 35 at 32-33.

had the opportunity to present the explanation that Plaintiff was not selected for the position because of a mis-routed email in its correspondence with the IHRC. However, Defendant failed to do so. Rather, it indicated it had reviewed Plaintiff's application before rejecting it and asserted that it chose not to interview Plaintiff because his application appeared aggressive and because he was not qualified. These inconsistent explanations could lead a rational trier of fact to find that Defendant's explanation is unworthy of credence.

    *4. Importance of the "Actually Played a Role" Language*

Defendant argues that summary judgment is appropriate because Plaintiff cannot show that his age was the reason he did not get the job. Defendant repeatedly cites to language from *Pottenger* that Plaintiff "must show that his age 'actually played a role in [Defendant's decision making] process and had a determinative influence on the outcome"[44] in support of this argument. This language, standing alone, may suggest that Plaintiff must meet some higher burden of proof regarding the role his age played in Defendant's decision. However, the context in which this language arose illustrates its significance. The phrase originates in the case of *Hazen Paper Co. v. Biggins*, where the court evaluated a disparate treatment ADEA claim by a sixty-two year old employee. The employee was fired shortly before his ten-year anniversary with his employer for the purpose of ensuring the employee's pension benefits did not vest[45]. Vacating the judgment of the circuit court, the Supreme Court held that an employment decision based on years of service, while correlated with age, is analytically distinct from a decision that is

---

[44] *Pottenger*, 329 F.3d at 745 (quoting *Reeves*, 530 U.S. at 141).

[45] *Hazen*, 507 U.S. at 607

based on age.[46] The Court reasoned that in situations where the employment decision merely correlates with age, it does not run afoul of "[t]he prohibited stereotype ("Older employees are likely to be ___) . . ." that the ADEA seeks to remedy.[47] Thus, we see that the "actually played a role" language served to differentiate between decisions that are correlated with age and those that are motivated by age. Later Ninth Circuit cases do little more than use the language as a prelude to their introduction of the "the familiar framework developed in *McDonnell Douglas*. . . ."[48] Thus, applying the language to this case means only that if Plaintiff cannot meet the burden of proof established under the *McDonnell Douglas* framework, he has not shown his age "actually played a role" in his adverse employment action.

Therefore, because Plaintiff has shown that a genuine issue of material fact exists as to whether he was rejected, because Defendant's statements give rise to an inference of discrimination, and because Plaintiff has provided evidence upon which a reasonable trier of fact could conclude Defendant's explanation is a pretext, the Court will deny Defendant's Motion for Summary Judgment.

## II. MOTION TO STRIKE

Defendant has filed an Evidentiary Objection and Motion to Strike Portions of the

---

[46]*Id.* at 611

[47]*Id.* at 612.

[48]*See Reeves*, 530 U.S. at 141 (additionally recognizing that because there is seldom "eyewitness testimony" as to whether age played a role, the Courts of Appeals employ the *McDonnell Douglas* framework); *see also Hazen,* 507 U.S. at 611-12.

Affidavit of Kenneth Wold.[49]  This Motion objects to portions of Mr. Wold's affidavit on evidentiary grounds of hearsay, lack of proper foundation, and containing speculative or conclusory statements.  However, none of the objected-to portions are necessary for this Court to consider in deciding the Motion for Summary Judgment.  Thus, the Motion to Strike will be denied as moot.

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 32) is DENIED.  It is further

ORDERED that Defendant's Motion to Strike (Docket No. 39) is DENIED as moot.

DATED   June 16, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[49] Docket No. 39.